IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:99-HC-856-BO

FILED
MAR 15 2001

| | |
|---|---|
| MONTOYA DONTAE SHARPE,<br>Petitioner<br><br>v.<br><br>MICHAEL T. W. BELL,<br>Appellee. | )<br>)<br>)<br>)<br>) ORDER<br>)<br>)<br>)<br>) |

This matter is before the Court on Montoya Dontae Sharpe's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Sharpe is currently serving a life sentence in North Carolina state prison after being found guilty of first degree murder in Pitt County Superior Court. For the following reasons, this writ is denied, and part of these proceedings are remanded to state court for further proceedings.

## BACKGROUND

Sharpe was indicted on April 18, 1994, for the February 1, 1994, murder of George Radcliffe. Sharpe was tried by a jury in Pitt County Superior Court and on July 27, 1995, he was found guilty and sentenced to life in prison.

Sharpe appealed his conviction on the grounds that the trial court erred in not admitting some of the testimony of Tracy Highsmith. Highsmith would have testified that her boyfriend, Damien Smith, confessed to her that he committed the murder for which Sharpe was charged. Smith committed suicide less than a month after the murder of Radcliffe and thus was not available during the trial. At trial, Sharpe's counsel argued that Smith's statements should be

1

admitted under the dying declaration or state of mind exceptions to the hearsay rule. On July 31, 1996, Sharpe's direct appeal was denied by the North Carolina Supreme Court. State v. Sharpe, 344 N.C. 190, 473 S.E.2d 3 (1996). The North Carolina Supreme Court held that the trial court correctly refused to admit this evidence because neither the dying declaration nor the state of mind exceptions applied. The North Carolina Supreme Court also held that Sharpe could not now argue that Smith's statement was admissible as a statement against penal interest because that ground had not been argued before the trial court.

On February 14, 1997, Sharpe filed a Motion for Appropriate Relief ("MAR") based on: (1) a claim of ineffective assistance of counsel and (2) the recantation by a trial witness of her testimony during the trial. On May 6, 1998, the Honorable W. Russell Duke, Jr., denied Sharpe's MAR. Sharpe then appealed the denial of his MAR to the North Carolina Supreme Court, claiming ineffective assistance of counsel and that the trial court during the MAR erred by finding that the recantation testimony of the witness was not credible. Sharpe's petition for a write of certiorari was denied on August 19, 1999.

Sharpe filed this petition on December 22, 1999, claiming ineffective assistance of counsel and error by the MAR judge. This Court initiated an evidentiary hearing in the above-captioned matter on October 17, 2000.

## DISCUSSION

Sharpe offers two grounds on which this Court could grant his writ: (1) ineffective assistance of counsel and (2) that the state courts erred in making their determinations and findings during the MAR. This Court will address both of those issues.

### Ineffective assistance of counsel

2

In order to prove ineffective assistance of counsel, Petitioner first must prove that his counsel's representation fell below objective standards of reasonableness. See Strickland v. Washington, 466 U.S. 668, 688 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable effective assistance." Id. at 689. Petitioner must then show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."). See also Hutchins v. Garrison, 724 F.2d 1425, 1431 (4th Cir. 1983) (explaining that the petitioner has the burden to prove prejudice).

*A. Procedural Bar*

Respondent claims that Sharpe's petition for a writ of habeas corpus on the grounds of ineffective assistance of counsel is procedurally barred. This Court notes that under McCarver v. Lee, 221 F.3d 583 (4th Cir. 2000), N.C.G.S. §15A-1419(a)(3) serves as a procedural bar to ineffective assistance of counsel claims that could have been reviewed on direct appeal. Notwithstanding the demands that are placed on appellate counsel on direct appeal, because Sharpe could have raised this issue on direct appeal, his claim for ineffective assistance of counsel is barred under McCarver.

Sharpe argues that the denial of his ineffective assistance of counsel claim would result in a fundamental miscarriage of justice. In Herrera v. Collins, 506 U.S. 390 (1993), the United States Supreme Court stated that the conjunction of a claim of actual innocence, and a constitutional claim, can surmount the high hurdle of a fundamental miscarriage of justice. This Court is remanding this case to state court for further proceedings and for further development of

3

the evidence in this case. Because there are additional factual and evidentiary claims that have not been adequately considered by the state courts, this Court cannot yet rule on the existence of a fundamental miscarriage of justice.

## Motion for Appropriate Relief

Sharpe also argues that the state courts erred in denying him his Motion for Appropriate Relief. Under 28 U.S.C. § 2254(d), this Court must find that a decision was reached that was contrary to federal or constitutional law or that the decision was based on an unreasonable determination of the facts. Specifically, there are three issues under which Sharpe has cognizable claims under 2254(d): (1) the recantation testimony of Charlene Johnson; (2) the exclusion of the testimony of Highsmith concerning Smith's confession; and (3) the additional testimony of Dearl Powell at this Court's evidentiary hearing on October 7, 2000.

*A. Recantation testimony of Charlene Johnson*

Charlene Johnson was one of only two witnesses for the state during Sharpe's trial. At trial she testified that she witnessed the shooting of George Radcliffe. Before the trial, the Greenville Police Department approached her and asked her to testify at the trial of Sharpe. After the trial and while Sharpe was appealing, Johnson came to the appellate counsel's office unannounced and told him that she had lied during the trial.

At the MAR hearing Johnson testified that she did not appear at Sharpe's trial voluntarily. On the morning of the trial she informed the State that she would not appear at the trial, in contravention of a State-issued subpoena ordering her to appear and testify. Officers from the Greenville Police Department went to her house looking for her, and Johnson only agreed to testify after she was told that she would be put in jail if she refused. She was driven to the

4

courthouse by a Greenville Police Department detective and placed in handcuffs when she arrived at the courthouse.

Johnson testified at the MAR hearing that she was not where she testified that she was on the night of the murder. She testified that everything that she said during the trial was untrue, and that the only reason that she testified was because she felt she had to either testify or go to jail. Judge Duke entered a finding that Johnson's recantation was not credible and denied Sharpe's MAR.

*B. Confession of Darien Smith/Admission of hearsay evidence*

During the trial, Sharpe's trial counsel attempted to admit the testimony of Tracy Highsmith. On <u>voir dire</u>, Highsmith testified that, on the night of the murder, her boyfriend Damien Smith told her that he had robbed and shot a man but did not know that if he had killed him. Upon discovery the next day that the victim had died, Smith admitted to Highsmith that he had killed the man and that he would kill himself before he would go to jail for killing a white man. Highsmith testified that he repeated this comment numerous times over the next three weeks and confessed to the shooting two or three more times. Twenty-seven days after the murder Smith killed himself by shooting himself in the head. Sharpe's trial attorney unsuccessfully argued that this testimony should be admitted under the dying declaration or state of mind exceptions to the hearsay rule. Now Sharpe argues that his counsel was ineffective for failing to argue that this testimony should be admitted as a statement against penal interest.

The trial court refused to allow the testimony of Highsmith regarding the repeated statements of her deceased boyfriend Damien Smith. Highsmith also said that she could corroborate Smith's statements because Smith had left their home shortly before the time of the

5

murder and returned shortly thereafter in an excited state, describing the shooting. On appeal, the North Carolina Supreme Court refused to consider the admissibility of this evidence under the statement against penal interest exception to the rule excluding hearsay. Sharpe at 194 ("...it is well settled in this jurisdiction that defendant cannot argue for the first time on appeal this new ground for admissibility that he did not present to the trial court.")

The North Carolina Rules of Evidence define a statement against penal interest as follows:

> [a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability,... that a reasonable man in his position would not have made the statement unless he believed it to be true.

N.C.G.S. § 8C-1, Rule 804(b)(3). Brandis and Broun on North Carolina Evidence sets out the requirements for admissibility under 804(b)(3): (1) the declarant must be unavailable; (2) at the time the statement was made, the statement must have been so far contrary to the declarant's interest that a reasonable person would not have made the statement were it untrue; (3) the statement was contrary to the declarant's pecuniary or proprietary interest, or could subject him to civil or criminal liability; and (4) in a criminal case, corroborating circumstances must clearly indicate the trustworthiness of the statement. Kenneth S. Broun, Brandis and Broun on North Carolina Evidence, § 238 (5th ed., 1998). Neither the trial court nor the North Carolina Supreme Court considered Highsmith's proposed testimony under the above test.

This Court finds it constitutionally suspect that the exclusion of the evidence by the trial court is unreviewable, despite the incorrect arguments made by the trial counsel.

6

If evidence should be admitted under the law, the fact that the trial attorney misstated or mischaracterized the evidence should not be fatal to its admission. The trial court should act as a gatekeeper and admit all admissible evidence, and the trial court is supposed to have plenary knowledge of the law and the plenary power to admit evidence even when the incorrect grounds are argued. By excluding this key evidence, and by the North Carolina Supreme Court's refusal even to consider the evidence, Sharpe's due process rights and Sixth Amendment right to have a "compulsory process for obtaining witnesses in his favor" may have been abridged.

C. *New witness testimony*

During this Court's October evidentiary hearing, this Court heard the sworn testimony of Dearl Powell. Powell testified that he witnessed Damien Smith approach the victim and demand money. He then heard a gunshot and saw Smith flee the scene. This evidence was not offered during the trial, on appeal, or during the MAR.

D. *Actual innocence and exhaustion of state remedies*

By offering this new evidence of Dearl Powell, this Court holds that Sharpe is making a claim of actual innocence. North Carolina law allows for further proceedings designed to deal with claims of actual innocence based upon newly discovered evidence. See N.C.G.S. § 15A-1420(c). Because of this mechanism, this claim has not been fully exhausted as required under 28 U.S.C. § 2254(b)(1)(A) and is not yet ripe for consideration by this Court.

This Court notes that Sharpe has raised many constitutional issues in his petition, but these are not yet cognizable because of his failure to exhaust his state court remedies.
7

Sharpe's evidence of recantation is insufficient standing on its own to raise constitutional questions, Thompson v. Garrison, 516 F.2d 986, 988 (4th Cir. 1975) ("Recantation of testimony alone, however, is insufficient to set aside a conviction on the ground that the due process clause has been violated."), but the cumulative effect of the recantation testimony, the failure of the trial court to admit Highsmith's testimony concerning Damien Smith, and the failure of the North Carolina Supreme Court to consider this evidence merely because of a procedural requirement bring into question grave questions about Sharpe's due process rights in these proceedings.

## CONCLUSION

Sharpe's petition is DENIED on the grounds of ineffective assistance of counsel, and, because Sharpe has not exhausted his state remedies, this case is REMANDED to state court for further proceedings consistent with this opinion.

SO ORDERED

This 12 day of March, 2001.

TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE