FILED
JUN 5 2001
DAVID W. DANIEL, CLERK
US DISTRICT COURT
E. DIST. N. CAROLINA

IN RE: MONTOYA DONTAE SHARPE,

Petitioner,

TO: DIANE A. REEVES, (Assistant Attorney
General, State of North Carolina),
CLARK EVERETT, (District Attorney
of Pitt County), HONORABLE RUSSELL
W. DUKE, JR., (Senior Resident Superior
Court Judge of Pitt County), MICHAEL
T. W. BELL, (Warden of Burgaw
Correctional Center), et al.,

Respondent(s).

## PETITION TO COMPEL FURTHER EVIDENTIARY PROCEEDINGS

**COMES NOW** Montoyae Dontae Sharpe, Pro Se, petitioner in the above captioned case, pursuant to 28 U.S.C. 1651 (a), hereby moves the Honorable Terrance W. Boyle, Chief United States District Judge, for the issuance of an Order to Compel Respondent(s), to docket and schedule further evidentiary proceedings consistent with this Court's March 12, 2001 Order and Opinion *Remanding the case of State v. Sharpe, (94-CR-7660)* to state court for further evidentiary proceedings and development of the cumulative evidence, or in the alternative, the issuance of an Advisory Order to Respondent(s) defining their official duties in nexus to the meaning of this Court's March 12 Order.

## STATEMENT OF CASE

On April 18, 1994, Montoyae Dontae Sharpe, ("petitioner") was indicted for the February 1,

1994 murder of George Radcliffe in Greenville, Pitt County, North Carolina. On July 27, 1995, petitioner was found guilty and sentenced, in Pitt County Superior Court (94-CR-7660), to a term of life imprisonment. On February 14, 1997, pettioner filed a Motion for Appropriate Relief ("MAR") pursuant to North Carolina General Statute 15A-1411 et seq., ("N.C.G.S.") in which he raised several issues. On May 6, 1998, the Honorable Russell W. Duke, Jr., Pitt County Superior Court Judge, denied petitioner's (MAR). Petitioner appealed to the North Carolina Supreme Court via Writ of Certiorari. The Writ was denied on August 19, 1999. Petitioner then filed a Petition under 28 U.S.C. 2254 in this Court on December 22, 1999. On October 17, 2000, this Court held an evidentiary hearing pursuant to the issues raised in the Section 2254 petition. On March 12, 2001, this Court entered an Order and Opinion denying in part the Section 2254 petition on the basis the exhaustion requirement of 28 U.S.C. 2254 (b)(1)(A) had not been surmounted. The balance of the March 12 Order remanded the Sharpe case to Pitt County Superior Court to hold additional and further evidentiary proceedings consistent with the Opinion of this Court. **(See Exhibit A, March 12, 2001 Order, at 8)**. To date, Respondent(s) have failed to docket, schedule, and hold further evidentiary proceedings. Without more, Respondent(s), through Mr. Clark Everett, Pitt County District Attorney, suggests that the State of North Carolina is under no obligation to initiate any further action in the scheduling of further evidentiary proceedings. **(See Exhibit B, Daily Reflector Newspaper Article Quoting Mr. Everett, Paragraphs 3 and 4)**. Notwithstanding any extrapolation, an ordinary interpretation of this Court's March 12 Order and Opinion essentially directed the State of North Carolina, not petitioner who lacks any scheduling authority, to initate and hold additional and further evidentiary proceedings. Congruently, under N.C.G.S. 15A-1411 a (MAR) is deemed an action in the original cause,

State v. Sharpe, (94-CR-7660). This Court's March 12 Order and Opinion and North Carolina Law, i.e., N.C.G.S. 15A-1411, impose no requirement for a successive (MAR) as a means of initiating the furtherance of evidentiary proceedings. Indeed this Court's Opinion reflects a deficiency in the State Court's evidentiary proceedings to the extent that such proceedings did not facilitate the full development of cumulative evidence as well as the proper consideration of such evidence. Petitioner contends it would be extemely burdensome, dilatory, and repetitive should he be required to file a successive (MAR) raising for the most part the same issues previously raised in the initial (MAR) and Section 2254 petition, and reviewed by this Court in its March 12 Order and Opinion. **(Cf. Rule 9, of the Rules Governing Section 2254 Cases).**

## STATEMENT OF ISSUES

1) In accordance with this Court's March 12 Order and Opinion, is the State of North Carolina required to schedule further evidentiary proceedings to develop cumulative evidence, and thereby give proper consideration of such evidence consistent with the Opinion of this Court?

2) Does the import of N.C.G.S. 15A-1411 et seq., preclude the necessity of filing a successive (MAR) raising for the most part issues previously raised and reviewed by this Court?

3) Would the dilatory and repetitive effect of any requirement for petitioner to file a successive (MAR) be considered violative of his due process rights?

## RELIEF SOUGHT

Submitted this 6 day of June, 2001.

## CERTIFICATE OF SERVICE

I, Montoyae Dontae Sharpe hereby certify on  6/6/01  the foregoing Petition To Compel Further State Court Evidentiary Proceedings was deposited into a U.S. mail depository with prepaid postage thereon an envelope addressed to:

Diane A. Reeves, Esq.
Assistant Attorney General of N.C.
Capital Litigation Section
P.O. Box 629
Raleigh, North Carolina 27602-0629

Clark Everett, Esq.
District Attorney of Pitt County
P.O. Box 8185
Greenville, North Carolina 27835

Honorable Russell W. Duke, Jr.
Pitt County Superior Court Judge
Pitt County Courthouse
Greenville, North Carolina 27835

Michael T.W. Bell, (Warden)
Burgaw Correctional Center
P.O. Box 1058
Burgaw, North Carolina 28425

*Montoyae Sharpe*
Montoyae Dontae Sharpe

Sharpe
-0652- Home
0-3506- W
SharonSharpe@Hotmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:99-HC-856-BO

FILED
MAR 15 2001

MONTOYA DONTAE SHARPE, )
Petitioner )
)
v. )
) ORDER
MICHAEL T. W. BELL, )
Appellee. )
_____)

This matter is before the Court on Montoya Dontae Sharpe's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Sharpe is currently serving a life sentence in North Carolina state prison after being found guilty of first degree murder in Pitt County Superior Court. For the following reasons, this writ is denied, and part of these proceedings are remanded to state court for further proceedings.

## BACKGROUND

Sharpe was indicted on April 18, 1994, for the February 1, 1994, murder of George Radcliffe. Sharpe was tried by a jury in Pitt County Superior Court and on July 27, 1995, he was found guilty and sentenced to life in prison.

Sharpe appealed his conviction on the grounds that the trial court erred in not admitting some of the testimony of Tracy Highsmith. Highsmith would have testified that her boyfriend, Damien Smith, confessed to her that he committed the murder for which Sharpe was charged. Smith committed suicide less than a month after the murder of Radcliffe and thus was not available during the trial. At trial, Sharpe's counsel argued that Smith's statements should be

1

Exhibit A

admitted under the dying declaration or state of mind exceptions to the hearsay rule. On July 31, 1996, Sharpe's direct appeal was denied by the North Carolina Supreme Court. State v. Sharpe, 344 N.C. 190, 473 S.E.2d 3 (1996). The North Carolina Supreme Court held that the trial court correctly refused to admit this evidence because neither the dying declaration nor the state of mind exceptions applied. The North Carolina Supreme Court also held that Sharpe could not now argue that Smith's statement was admissible as a statement against penal interest because that ground had not been argued before the trial court.

On February 14, 1997, Sharpe filed a Motion for Appropriate Relief ("MAR") based on: (1) a claim of ineffective assistance of counsel and (2) the recantation by a trial witness of her testimony during the trial. On May 6, 1998, the Honorable W. Russell Duke, Jr., denied Sharpe's MAR. Sharpe then appealed the denial of his MAR to the North Carolina Supreme Court, claiming ineffective assistance of counsel and that the trial court during the MAR erred by finding that the recantation testimony of the witness was not credible. Sharpe's petition for a write of certiorari was denied on August 19, 1999.

Sharpe filed this petition on December 22, 1999, claiming ineffective assistance of counsel and error by the MAR judge. This Court initiated an evidentiary hearing in the above-captioned matter on October 17, 2000.

## DISCUSSION

Sharpe offers two grounds on which this Court could grant his writ: (1) ineffective assistance of counsel and (2) that the state courts erred in making their determinations and findings during the MAR. This Court will address both of those issues.

### Ineffective assistance of counsel

2

In order to prove ineffective assistance of counsel, Petitioner first must prove that his counsel's representation fell below objective standards of reasonableness. See Strickland v. Washington, 466 U.S. 668, 688 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable effective assistance." Id. at 689. Petitioner must then show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."). See also Hutchins v. Garrison, 724 F.2d 1425, 1431 (4th Cir. 1983) (explaining that the petitioner has the burden to prove prejudice).

*A. Procedural Bar*

Respondent claims that Sharpe's petition for a writ of habeas corpus on the grounds of ineffective assistance of counsel is procedurally barred. This Court notes that under McCarver v. Lee, 221 F.3d 583 (4th Cir. 2000), N.C.G.S. §15A-1419(a)(3) serves as a procedural bar to ineffective assistance of counsel claims that could have been reviewed on direct appeal. Notwithstanding the demands that are placed on appellate counsel on direct appeal, because Sharpe could have raised this issue on direct appeal, his claim for ineffective assistance of counsel is barred under McCarver.

Sharpe argues that the denial of his ineffective assistance of counsel claim would result in a fundamental miscarriage of justice. In Herrera v. Collins, 506 U.S. 390 (1993), the United States Supreme Court stated that the conjunction of a claim of actual innocence, and a constitutional claim, can surmount the high hurdle of a fundamental miscarriage of justice. This Court is remanding this case to state court for further proceedings and for further development of

3

the evidence in this case. Because there are additional factual and evidentiary claims that have not been adequately considered by the state courts, this Court cannot yet rule on the existence of a fundamental miscarriage of justice.

## Motion for Appropriate Relief

Sharpe also argues that the state courts erred in denying him his Motion for Appropriate Relief. Under 28 U.S.C. § 2254(d), this Court must find that a decision was reached that was contrary to federal or constitutional law or that the decision was based on an unreasonable determination of the facts. Specifically, there are three issues under which Sharpe has cognizable claims under 2254(d): (1) the recantation testimony of Charlene Johnson; (2) the exclusion of the testimony of Highsmith concerning Smith's confession; and (3) the additional testimony of Dearl Powell at this Court's evidentiary hearing on October 7, 2000.

### A. Recantation testimony of Charlene Johnson

Charlene Johnson was one of only two witnesses for the state during Sharpe's trial. At trial she testified that she witnessed the shooting of George Radcliffe. Before the trial, the Greenville Police Department approached her and asked her to testify at the trial of Sharpe. After the trial and while Sharpe was appealing, Johnson came to the appellate counsel's office unannounced and told him that she had lied during the trial.

At the MAR hearing Johnson testified that she did not appear at Sharpe's trial voluntarily. On the morning of the trial she informed the State that she would not appear at the trial, in contravention of a State-issued subpoena ordering her to appear and testify. Officers from the Greenville Police Department went to her house looking for her, and Johnson only agreed to testify after she was told that she would be put in jail if she refused. She was driven to the

4

courthouse by a Greenville Police Department detective and placed in handcuffs when she arrived at the courthouse.

Johnson testified at the MAR hearing that she was not where she testified that she was on the night of the murder. She testified that everything that she said during the trial was untrue, and that the only reason that she testified was because she felt she had to either testify or go to jail. Judge Duke entered a finding that Johnson's recantation was not credible and denied Sharpe's MAR.

*B. Confession of Darien Smith/Admission of hearsay evidence*

During the trial, Sharpe's trial counsel attempted to admit the testimony of Tracy Highsmith. On voir dire, Highsmith testified that, on the night of the murder, her boyfriend Damien Smith told her that he had robbed and shot a man but did not know that if he had killed him. Upon discovery the next day that the victim had died, Smith admitted to Highsmith that he had killed the man and that he would kill himself before he would go to jail for killing a white man. Highsmith testified that he repeated this comment numerous times over the next three weeks and confessed to the shooting two or three more times. Twenty-seven days after the murder Smith killed himself by shooting himself in the head. Sharpe's trial attorney unsuccessfully argued that this testimony should be admitted under the dying declaration or state of mind exceptions to the hearsay rule. Now Sharpe argues that his counsel was ineffective for failing to argue that this testimony should be admitted as a statement against penal interest.

The trial court refused to allow the testimony of Highsmith regarding the repeated statements of her deceased boyfriend Damien Smith. Highsmith also said that she could corroborate Smith's statements because Smith had left their home shortly before the time of the

5

murder and returned shortly thereafter in an excited state, describing the shooting. On appeal, the North Carolina Supreme Court refused to consider the admissibility of this evidence under the statement against penal interest exception to the rule excluding hearsay. Sharpe at 194 ("...it is well settled in this jurisdiction that defendant cannot argue for the first time on appeal this new ground for admissibility that he did not present to the trial court.")

The North Carolina Rules of Evidence define a statement against penal interest as follows:

> [a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability,... that a reasonable man in his position would not have made the statement unless he believed it to be true

N.C.G.S. § 8C-1, Rule 804(b)(3). Brandis and Broun on North Carolina Evidence sets out the requirements for admissibility under 804(b)(3): (1) the declarant must be unavailable; (2) at the time the statement was made, the statement must have been so far contrary to the declarant's interest that a reasonable person would not have made the statement were it untrue; (3) the statement was contrary to the declarant's pecuniary or proprietary interest, or could subject him to civil or criminal liability; and (4) in a criminal case, corroborating circumstances must clearly indicate the trustworthiness of the statement. Kenneth S. Broun, Brandis and Broun on North Carolina Evidence, § 238 (5th ed., 1998). Neither the trial court nor the North Carolina Supreme Court considered Highsmith's proposed testimony under the above test.

This Court finds it constitutionally suspect that the exclusion of the evidence by the trial court is unreviewable, despite the incorrect arguments made by the trial counsel.

6

If evidence should be admitted under the law, the fact that the trial attorney misstated or mischaracterized the evidence should not be fatal to its admission. The trial court should act as a gatekeeper and admit all admissible evidence, and the trial court is supposed to have plenary knowledge of the law and the plenary power to admit evidence even when the incorrect grounds are argued. By excluding this key evidence, and by the North Carolina Supreme Court's refusal even to consider the evidence, Sharpe's due process rights and Sixth Amendment right to have a "compulsory process for obtaining witnesses in his favor" may have been abridged.

*C. New witness testimony*

During this Court's October evidentiary hearing, this Court heard the sworn testimony of Dearl Powell. Powell testified that he witnessed Damien Smith approach the victim and demand money. He then heard a gunshot and saw Smith flee the scene. This evidence was not offered during the trial, on appeal, or during the MAR.

*D. Actual innocence and exhaustion of state remedies*

By offering this new evidence of Dearl Powell, this Court holds that Sharpe is making a claim of actual innocence. North Carolina law allows for further proceedings designed to deal with claims of actual innocence based upon newly discovered evidence. See N.C.G.S. § 15A-1420(c). Because of this mechanism, this claim has not been fully exhausted as required under 28 U.S.C. § 2254(b)(1)(A) and is not yet ripe for consideration by this Court.

This Court notes that Sharpe has raised many constitutional issues in his petition, but these are not yet cognizable because of his failure to exhaust his state court remedies.

Sharpe's evidence of recantation is insufficient standing on its own to raise constitutional questions, Thompson v. Garrison, 516 F.2d 986, 988 (4th Cir. 1975) ("Recantation of testimony alone, however, is insufficient to set aside a conviction on the ground that the due process clause has been violated."), but the cumulative effect of the recantation testimony, the failure of the trial court to admit Highsmith's testimony concerning Damien Smith, and the failure of the North Carolina Supreme Court to consider this evidence merely because of a procedural requirement bring into question grave questions about Sharpe's due process rights in these proceedings.

## CONCLUSION

Sharpe's petition is DENIED on the grounds of ineffective assistance of counsel, and, because Sharpe has not exhausted his state remedies, this case is REMANDED to state court for further proceedings consistent with this opinion.

SO ORDERED

This 1__ day of March, 2001.

TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE

I certify the foregoing to be a true and correct copy of the original.
David W. Daniel, Clerk
United States District Court
Eastern District of North Carolina

Deputy Clerk

8

Friday, March 30, 2001

# District Court judge remands case to state

■ Judge Terrance Boyle gave the order based on an appeal brought by Montoya Dontae Sharpe, who is serving a life sentence in a state prison after being found guilty of first-degree murder in Pitt County Superior Court.

**By Glenda Jakubowski**
The Daily Reflector

A U.S. District Court Judge ordered the case of a Pitt County man convicted of murder remanded back to the state because of newly discovered evidence but denied a writ of habeas corpus.

Judge Terrance Boyle gave the order on March 15 based on an appeal brought by Montoya Dontae Sharpe, who is serving a life sentence in state prison after being found guilty of first-degree murder in Pitt County Superior Court.

"This is not an order for a new trial," Clark Everett, Pitt County district attorney, said.

Sharpe's lawyer could file new motions or appeals on his behalf with the state, or appeal Boyle's decision, according to Everett. He said the next move is up to Sharpe and his attorney, not the state of North Carolina.

Sharpe was convicted of the Feb. 1, 1994, murder of George Radcliffe, a Fountain Powerboats executive. Radcliffe was allegedly cruising west Greenville looking for drugs, according to witnesses.

The new evidence, given for the first time last October, is the testimony of a man who claims someone other than Sharpe could have committed the murder.

Dearl Powell said during an evidentiary hearing conducted by Boyle that he had seen Damien Smith approach the victim and demand money. He then heard a gunshot and saw Smith running form the scene, he said.

During the 1995 murder trial, Sharpe's then attorney, Cherry Stokes, attempted to introduce testimony by Tracy Highsmith, Smith's girlfriend. Highsmith said Smith told her he had killed Radcliffe.

Smith committed suicide about a month after Radcliffe's murder.

The trial court refused to allow Highsmith's testimony. On appeal, the North Carolina Supreme Court also refused to consider Highsmith's evidence.

Also during the 1995 trial, two eyewitnesses testified they saw Sharpe shoot Radcliffe with a .45-caliber gun after arguing over the price of some crack cocaine.

After the trial, Charlene Johnson, one of the eyewitnesses, said she lied during the trial about seeing Sharpe kill Radcliffe because she was afraid she would go to jail otherwise.

Judge W. Russell Duke Jr. ruled at a later hearing that Johnson's recantation was not credible.

In the current order, Boyle denied Sharpe's petition for a writ of habeas corpus on grounds of ineffective counsel and said the eyewitness's recantation was insufficient on its own to raise constitutional questions.

But the judge also wrote that the "cumulative effect of the recantation testimony, and the failure of the trial court to admit Highsmith's testimony concerning Damien Smith, bring into question grave questions about Sharpe's due process rights in these proceedings."

Sharpe's attorney, Kristen Parks, declined to comment on the prospect of future legal action on Sharpe's behalf.

Exhibit B

Case 5:99-hc-00856-BO    Document 28    Filed 06/05/01    Page 13 of 13